IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:18-CV-107-FL

| | |
|---|---|
| JUANITA BRITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 25, 30). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court adopts the M&R as its own, grants defendant's motion, denies plaintiff's motion, and affirms defendant's final decision.

## BACKGROUND

On June 30, 2014, plaintiff protectively filed an application for disability insurance benefits and supplemental security income. In both applications, plaintiff alleged disability beginning June 5, 2014. The claims were denied initially and upon reconsideration. Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), who, after a January 12, 2017, hearing where a vocational expert ("VE") appeared and testified, denied plaintiff's claims by decision entered March 30, 2017. Following the ALJ's denial of her applications, plaintiff timely filed a request for

review, and the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as defendant's final decision. Plaintiff then filed a complaint in this court on June 13, 2018, seeking review of defendant's decision.

**COURT'S DISCUSSION**

A. Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 5, 2014. At step two, the ALJ found that plaintiff had the following severe impairments: irritable bowel syndrome ("IBS"), bone spurs, bilateral plantar fasciitis, and major depressive disorder. However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following additional limitations: never climb ladders, ropes, or scaffolds; occasionally kneel, crouch, crawl, climb ramps/stairs, balance, and stoop; avoid all exposure to hazardous machinery and unprotected heights; frequent bilateral gross and fine manipulation; sitting or standing as desired, such as in bench work occupations; and, mentally, plaintiff is limited to simple, routine tasks with occasional interaction with the public and co-workers, and occasional over the shoulder supervision. At step four, the ALJ concluded plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.     Analysis

Plaintiff objects to the magistrate judge M&R 1) finding no error in the ALJ's assessment of medical evidence from plaintiff's treating and examining physicians, 2) finding evidence sufficient for meaningful review of the ALJ's RFC determination, and 3) finding no error in the hypothetical question posed to the VE. The court will address each objection in turn below.

1. The ALJ's Evaluation of Evidence from Treating and Examining Physicians

Plaintiff argues first that the magistrate judge "erroneously concluded that the Claimant's medical evidence from Claimant's treating and examining physicians do not constitute an opinion, therefore are not entitled to be weighed," arguing that the ALJ is required to consider all relevant evidence in the record" and that "records from Claimant[']s treating and examining physician are . . . required to be evaluated and weighed." (DE 36 at 3-4).

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. Id. §§ 404.1527(c)(l), 416.927(c)(l). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. Id. §§ 404.1527(c)(2), 416.927(c)(2).

However, the ALJ is required to assign weight to medical opinions, not medical evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c). Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [plaintiff's] impairment(s), including [plaintiff's] symptoms, diagnosis and prognosis, what [plaintiff] can still do despite impairment(s), and [plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

Plaintiff does not direct the court's attention to specific medical opinions the ALJ failed to evaluate and weigh, and instead directs the court generally to the following:

> The physicians from Southeastern Regional Physician Service on September 6, 2011 assessed claimant with chronic pain in her right foot and ankle; standing made her pain worse. (A.R. 421-22, 412), with bilateral foot pain with plantar fasciitis, without any long-lasting benefit. (A.R.408-410) In January 2014 she was assessed with chronic fatigue, abdominal pain, [gastroesophageal reflux disease ("GERD")],

5

> irritable bowel syndrome (A.R. 444, 442) and constipation, and rectal bleeding. (A.R. 439-441) (A.R. 478-479).
>
> On February 23, 2012 Cape Fear Podiatry Associate's diagnosed claimant with plantar fasciitis, release spurs, and acute spur syndrome in February 2012 (A.R. 434), and recommended a heel lift. (A.R. 431-434) On February 23, 2012 she was prescribed a quarter heel lift and dancer pad. (A.R. 433) She was seen on May 29, 2012 for bilateral foot pain. (A.R. 429) On July 12, 2012 Dr. Thompson added on additional pad, longitudinal arch, and heel lift. (A.R. 406) Dr. Ricotta diagnosed claimant with plantar fasciitis, Achilles tendonitis, capsulate mid foot and gave ankle-foot orthosis. (A.R. 453)

(DE 36 at 5).

A review of these records reveal they do not contain medical opinions or judgments on plaintiff's symptoms, diagnosis, or prognosis but instead reflect plaintiff's subjective symptoms, the results of examinations and objective testing, and diagnoses themselves. None of these records provide statements from medical sources that reflect judgments about the nature and severity of plaintiff's impairment, only that such impairments exist. See Graham v. Berryhill, No. 7:18-CV-22-FL, 2019 WL 1272545, at *5-6 (E.D.N.C. Jan. 10, 2019), report and recommendation adopted, No. 7:18-CV-22-FL, 2019 WL 1270933 (E.D.N.C. Mar. 19, 2019) (finding a physician's record of examination reflecting the claimant's subjective symptoms, the results of objective testing, and diagnoses but containing no judgments regarding prognosis, limitations, or severity was not a medical opinion that the ALJ was required to discuss); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *4 (M.D.N.C. Apr. 22, 2016) (internal citation omitted) (reasoning that a radiologist's conclusion that a MRI revealed that the plaintiff had multiple impairments was not a medical opinion because it did not offer "'judgments about' Plaintiff's 'prognosis,' what she 'can still do despite her impairments' or her 'physical or mental restrictions'"); Phillips v. Colvin, No 3:13-CV-307-MOC, 2014 WL 1713788, at *6 (W.D.N.C. Apr. 30, 2014) (finding where there is no

"medical conclusion or opinion concerning the impact of such diagnosis—either by expressing an opinion as to the impact on plaintiff's ability to do work-related activities or perform daily activities—such is not a medical opinion within the meaning of 20 C.F.R. § 416.927(a)(2)"); see also Welch v. Colvin, 566 F. App'x 691, 693–94 (10th Cir. 2014) ("none of the physicians Ms. Welch identifies provided medical opinions about her that, given her impairments, the ALJ was required to weigh. Rather, each physician simply diagnosed her impairments and in some cases recommended treatment for them.").

More specifically, and consistent with plaintiff's representations above, physicians from Southeastern Regional Physician Service multiple times assessed plaintiff with "pain/foot or ankle" or "pain in limb," with "chronic bilateral foot pain" and reported plaintiff's own subjective complaints; however, no information in the form of medical opinion is offered. (See Tr. at 408-410, 412, 421-22). Likewise, plaintiff was assessed with chronic fatigue, abdominal pain, GERD, IBS, constipation, and rectal bleeding, all of which were discussed by the ALJ, (see id. at 45, 47-49), but these assessments contain no form of medical opinion, (see id. at 439-442, 444, 477-479).

Regarding records from Cape Fear Podiatry Associate, these also provide diagnosis and treatment plan including use of various foot inserts, but no judgments are offered about the nature and severity of plaintiff's impairments, including plaintiff's symptoms, diagnosis, and prognosis, what plaintiff can still do despite impairments, or plaintiff's physical or mental restrictions. (See id. at 426-435, see also id. at 432 ("The patient's diagnosis is that she has a disorder of her plantar fascia.")). Likewise, as stated by plaintiff, Dr. Ricotta diagnosed claimant with plantar fasciitis,

7

Achilles tendonitis, and capsulate mid foot and provided plaintiff with an ankle-foot orthosis, but provided no judgment about the nature and severity of plaintiff's impairments. (Id. at 453).[1]

Plaintiff additionally argues that the "ALJ erred by not assigning weight to claimant's treating and examining physician statement, diagnosis and opinion in determining claimants' severe impairments" and determination of her RFC. (DE 36 at 4). However, plaintiff does not offer specific statements, diagnosis, or opinions from the record beyond those cited and discussed above. Additionally, plaintiff has failed to allege any specific error of assessment made by the ALJ such as what additional impairments should have been considered severe and how any error prejudiced plaintiff.

Thus, the ALJ did not err in evaluation of plaintiff's treating and examining physicians.[2]

2.  The ALJ's RFC Determination

An individual's RFC is the capacity she possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(l), 416.945(a)(l). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); see Hines v.

---

[1] Plaintiff briefly argues that "[t]his medical evidence is contrary to finding by the ALJ [that plaintiff has] no problem with ability to ambulate without any devices." (DE 36 at 5). However, the ALJ did not so find and instead found as follows: "The claimant's musculoskeletal impairments do not meet the severity of Listing 1.06 because they do not result in the inability to ambulate effectively as defined in 1.00B2b. The evidence of record demonstrates the claimant's ability to ambulate without any devices. (Tr. at 45). Evidence cited by the ALJ post-date the above evidence cited by plaintiff from Dr. Ricotta.

[2] Even if the ALJ did err in failing to weigh these sources, the error is harmless because the medical evidence contained in these sources is consistent with the ALJ's determination that plaintiff has the RFC to perform light work.

Brown, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC "'must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." Colvin, 780 F.3d at 636 (citation omitted). However, the Court of Appeals for the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Mascio, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (citations omitted).

Here, the court finds consistent with the recommendation of the magistrate judge that although the ALJ did not conduct a function-by-function analysis, the ALJ's RFC discussion is sufficient for the court to conduct a meaningful review. Plaintiff's only specific objection to the magistrate judge's recommendation is that the "ALJ failed to properly assess the claimant['s] capacity to perform work function, despite contradictory evidence in the record which frustrates meaningful review, as required by [Monroe]." (DE 36 at 6-7).[3] However, review of the evidence provided by plaintiff does not support plaintiff's argument.

First, plaintiff offers the functional reports from Southeastern Lifestyle Center for Rehabilitation. (Tr. at 686-708). Plaintiff argues her physician there 1) opined that plaintiff was not able to work due to her pain level, 2) prescribed plaintiff a night splint for her right foot because her

---

[3] Plaintiff also asserts that the "ALJ did not cite specific medical facts or nonmedical evidence." (DE 36 at 7). However, review of the ALJ's RFC determination reveals otherwise. (Tr. at 47-48).

9

pain got progressively worse, and 3) upon discharge of plaintiff, assessed plaintiff's state from the beginning of treatment to the conclusion as unchanged, (DE 36 at 6). Review of these records do indicate assessment that plaintiff's status was unchanged and that plaintiff was given a night splint; however, there is no indication plaintiff was given a night splint because of increasing pain, and the only record evidence regarding plaintiff's inability to work is found in the subjective section of the assessment and was not a determination made by a medical professional. Here, record evidence reveals plaintiff's condition was unchanged over the course of her treatment at this center and that she was given a night splint for her foot, but this is not inconsistent with the ALJ's RFC determination that "an exertional restriction to light work, with additional postural limitations and a sit/stand option will accommodate the claimant's bilateral foot pain and IBS symptoms." (Tr. at 47).

Similarly, plaintiff provides records from Premier Behavioral Services, Inc., where plaintiff was assessed with depression, anxiety, PTSD, and fatigue and found to have difficulty sleeping, social withdrawal, lack of concentration, and stress stemming from other people. (Tr. 667-680). However, plaintiff does not indicate how the ALJ failed to incorporate limitations stemming from this assessment or how this assessment is inconsistent with the ALJ's RFC determination.

In the RFC determination, the ALJ discussed plaintiff's limitations from mental impairments. (Tr. at 47-49). The ALJ acknowledged that in July 2016, plaintiff sought treatment for increased mental health issues and reported that her main source of stress was other people. (Id. at 48, 668). As a result, the ALJ imposed in the RFC social limitations to occasional interaction with the public and coworkers and occasional over-the-shoulder supervision. (Id. at 47-49). The ALJ discussed that plaintiff later sought treatment for increasing symptoms of depression and noted her memory

examination measured one out of three objects at five minutes, her insight and judgment were fair, and she could not correctly spell the word "world" backwards. (Id. at 49, 754, 757). The ALJ also cited treatment records from October and November 2016, which indicated plaintiff presented with appropriate mood and affect and denied emotional concerns, and treatment records from December 2016 indicating plaintiff's psychotropic medications were increased and adjusted to address complaints of feeling tired and unmotivated. (Id. at 49, 506-07). The ALJ concluded plaintiff's symptoms from depression demonstrated a need for limitation to simple, routine tasks. (Id. at 49).

Plaintiff further argues that Dr. Locklear, who treated her at Premier Behavior, diagnosed her as disabled. (DE 36 at 6). However, the cited evidence is in the employment history section of a form, and the "Disabled" box is checked. (Tr. at 670). Other options were "Retired," "Homemaker," "Student," and "Living in Institution." (Id.). Here, there is no indication that Dr. Locklear made a medical judgment that plaintiff was disabled but rather the record indicates plaintiff so reported.[4]

In formulating the RFC, the ALJ discussed the relevant evidence, explained how he accounted for plaintiff's limitations from her impairments, and cited substantial evidence in support of the RFC determination. Therefore, the ALJ committed no reversable error in the RFC determination.

3.  ALJ's Hypothetical to the VE

---

[4] Records from January 8, 2018, through February 19, 2018, which post-date the ALJ's March 30, 2017 decision, indicate that plaintiff had a calcaneal spur resection and Achilles tendon repair of the right foot on February 16, 2018. (Tr. at 13-38). The Appeals Council determined these records did not relate to the period at issue, (id. at 7), and plaintiff has not challenged that determination. Thus, the court does not address plaintiff's references to these records.

The ALJ may utilize a VE at steps four and five "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). For a VE's opinion to be "relevant or helpful," it must be given in response to a proper hypothetical question. Id. A proper hypothetical question "fairly set[s] out all of claimant's impairments" that are supported by the record. Id.

Here, the ALJ posed the following hypothetical:

> Assume a hypothetical individual of the Claimant's age and education with the past jobs described. Further assume this individual is limited to light exertion. Never climb ropes, ladders, or scaffolds. Occasional kneel, crouch, crawl; climb ramps, stairs; balance and stoop. Avoid all exposure to hazardous machinery and unprotected heights. Work would be limited to simple, routine tasks with occasional interaction with the public and coworkers and occasional over-the-shoulder supervision. Frequent bilateral gross and fine manipulation. And this individual would be able to perform the job either sitting or standing as desired, such as in benchwork occupations.

(Tr. at 95).

Plaintiff argues that the "only apparent mental or non-exertional limitations included in the ALJ's hypothetical questions" is a limitation that plaintiff would be "limited to simple routines, repetitive tasks," and also that "[t]here were numerous other limitations in the case record not included in the questions by the ALJ" to the VE, citing "occasional numbness in right foot," "pain with range of motion," "difficulty concentration and fatigue," "social withdrawal, lack of concentration, stress in other people." (DE 36 at 7).[5]

---

[5] Plaintiff also cites to her hypothyroidism; however, as stated by the ALJ and not challenged by plaintiff, "[t]reatment notes indicate that her hypothyroidism is stable." (Tr. 45). Plaintiff also argues that the ALJ should have incorporated in the hypothetical to the VE that plaintiff "was advised to apply ice to her knee two times a day, for 15 minutes at a time" and record evidence regarding plaintiff's lack of improvement following medical care. (DE 36 at 7). These appear not to be impairments to incorporate into the hypothetical but treatment instructions and assessments. Notwithstanding, these limitations were a part of the hypothetical where the VE was asked about light exertion with additional postural limitations and a sit/stand option. (Tr. 47, 95).

12

The ALJ fairly set out plaintiff's impairments in the hypothetical posed to the VE. First, plaintiff's argument as to the mental and non-exertional limitations included in the ALJ's hypothetical questions is inaccurate as well as plaintiff's argument that the ALJ did not address plaintiff's social-interaction limitations. The ALJ included in the hypothetical to the VE social-interaction limitations and several postural limitations, all of which are aimed at addressing plaintiff's nonexertional limitations. (Tr. at 95); see 20 C.F.R. §§ 404.1569a, 416.969a (providing examples of nonexertional limitations, including "difficulty functioning because you are nervous, anxious, or depressed" and "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.").

Additionally, the ALJ accounted for plaintiff's moderate difficulty in interacting with others by imposing a limitation to only occasional contact in the RFC and in the hypothetical to the VE, (Tr. at 46, 48, 95), and plaintiff has not suggested what further limitation is appropriate. The ALJ found plaintiff was only mildly limited in the other functional areas, (id. at 46), and imposed a limitation to simple, routine work to account for her depression and memory deficits, (id. at 49). The Fourth Circuit has determined that a limitation to simple, routine, and repetitive tasks in the hypothetical does not account for an individual moderately limited in her ability to maintain concentration, persistence, or pace. Mascio, 780 F.3d at 638. Here, plaintiff's ability to maintain concentration, persistence, or pace was only mildly limited, and plaintiff has failed to suggest why the limitation in the hypothetical to simple, routine tasks is insufficient or in what other way the hypothetical posed was deficient.

In sum, the ALJ included in the hypothetical to the VE all the limitations supported by the record as determined by the RFC analysis.

## CONCLUSION

Based on the foregoing, upon careful review of the M&R and the record, the court ADOPTS the M&R as its own. Plaintiff's motion for judgment on the pleadings (DE 25) is DENIED, and defendant's motion for judgment on the pleadings (DE 30) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED this the 30th day of September, 2019.

                                          LOUISE W. FLANAGAN
                                          United States District Judge